UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MALANA J. MORGAN,                )
                                 )
            Plaintiff,           )
                                 )         CIVIL ACTION NO.
VS.                              )
                                 )         3:05-CV-0079-G
THE NEIMAN-MARCUS GROUP,         )
INC./NEIMAN-MARCUS DIRECT,        )              **ECF**
                                 )
            Defendant.           )

**MEMORANDUM OPINION AND ORDER**

Before the court are (1) the motion of the defendant Neiman Marcus Group,
Inc. ("NMG") for summary judgment, (2) the motion of the plaintiff Malana J.
Morgan ("Morgan") for partial summary judgment, (3) Morgan's motion to strike
portions of NMG's summary judgment evidence, and (4) NMG's conditional motion
to consider an expert report as part of the summary judgment record.  For the reasons
stated below, NMG's motion to consider the expert report is granted, and the
remaining motions are denied.

I.  BACKGROUND

NMG is a retailer selling apparel and other high-end merchandise in stores throughout the United States.  Defendant's Brief in Support of its Motion for Summary Judgment ("NMG's Motion") at 1 (citing Declaration of Linda Hicks ("Hicks Declaration") ¶ 2 (Appendix to Defendant's Motion for Summary Judgment ("NMG's Appendix") at 2)).  Neiman Marcus Direct is NMG's unincorporated catalog and internet sales division.  *Id.*  In July 1994, Morgan began working for NMG as a customer service agent at the Neiman Marcus Direct facility's call center in Los Colinas, Texas.  Plaintiff's Brief in Support of Her Motion for Partial Summary Judgment ("Morgan's Motion") at 1; NMG's Motion at 1 (citing Oral Deposition of Malana Morgan Singleton ("Morgan Deposition") at 8-10, 13 (NMG's Appendix at 42-45); Exhibit 1 *attached to* Morgan Deposition (NMG's Appendix at 89)).  Beginning in or around 1996, Morgan and her husband, Charles Singleton, began suffering from several serious health conditions.  Morgan's Motion at 1.  On July 18, 2002, Morgan submitted to her employer a request for intermittent FMLA leave.  *Id.* at 4; NMG's Motion at 2 (citing Exhibit 7 *attached to* Morgan Deposition (NMG's Appendix at 92)); *see also* Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*.  NMG approved this request on August 30, 2002, and Morgan began taking intermittent leave on September 4, 2002.  NMG's Motion at 2.

From May 12 to May 15 of 2003, Morgan took leave to care for her husband because of his severe kidney problems. *Id*. at 2-3; Morgan's Motion at 8.  On May 20, 2003, shortly after her return, Morgan's supervisor, Grace Linden, fired Morgan, citing excessive absenteeism.  NMG's Motion at 3; Morgan's Motion at 8. Upon leaving her position at NMG, Morgan immediately telephoned Kelly McLendon ("McLendon"), Neiman Marcus Direct's human resources assistant manager, to express concern over her termination in light of her approved FMLA leave.  NMG's Motion at 3; Morgan's Motion at 12.  McLendon informed Morgan that she would investigate the matter and contact her in the future.  NMG's Motion at 3; Morgan's Motion at 12.  McLendon contends that she followed up on this conversation by sending a letter dated June 6, 2003 to Morgan.  NMG's Motion at 3; Morgan's Motion at 13.  The substance of the letter informs Morgan that she was wrongfully terminated because she was fired while "on approved Family Medical Leave for the care of [her] spouse."  Exhibit 18 *attached to* Morgan Deposition (NMG's Appendix at 110).  Because her termination was "in error," NMG wished to reinstate her employment.  *Id*.  However, in order to effect this reinstatement, Morgan was told to contact McLendon by June 20, 2003.  *Id*.  Morgan asserts she had not seen this letter prior to her June deposition, but she acknowledged that the signature on the certified mail receipt obtained by NMG was, in fact, her own, and

the address on the letter was correct.[1]  NMG's Motion at 3 (citing Morgan Deposition at 61-63 (NMG's Appendix at 72-74); Exhibit 19 *attached to* Morgan Deposition (NMG's Appendix at 113)).  When June 20, 2003 passed with no response from Morgan, NMG finalized her discharge effective June 23, 2003.  NMG's Motion at 4.

On December 8, 2004, Morgan filed this suit, based on the above facts, in the 193rd Judicial District Court of Dallas County, Texas.  Notice of Removal.  NMG removed the case to this court on January 12, 2005.  *Id*.  On August 22, 2005, the parties filed cross motions for summary judgment.  Docket Sheet.  On September 9, 2005, Morgan filed a motion to strike a portion of NMG's summary judgment evidence, and NMG responded on September 28, 2005, by filing a conditional motion to consider that same portion of evidence as part of the summary judgment record.  *Id*.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex*

---

[1]      The letter was allegedly sent by certified mail, but not certified mail with return receipt requested.  Therefore NMG obtained from the U.S. Postal Service a printout of the signature given upon receipt of the letter.  NMG's Motion at 3 n.2.

*Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  Nonetheless, summary judgment is a drastic remedy that should be used cautiously.  *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323; *Lindsey v. Sears Roebuck and Company*, 16 F.3d 616, 618 (5th Cir. 1994) ("When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with

respect to those issues on which the movant bears the burden of proof at trial.");

*Fontenot*, 780 F.2d at 1194 ("[I]f the movant bears the burden of proof on an issue,

either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure *all* of the essential elements of the

claim or defense to warrant judgment in his favor.") (emphasis in original).[2]  The

pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no

genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

      If the movant makes the showing, the nonmovant must then direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue

of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the

"opponent must do more than simply show . . . some metaphysical doubt as to the

material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475

U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is

sufficient to support a resolution of the factual issue in its favor.  *Anderson*, 477 U.S.

at 249.  The nonmovant cannot survive a motion for summary judgment by merely

resting on the allegations in its pleadings.  *Isquith for and on behalf of Isquith v. Middle*

---

     [2]     Morgan, as the movant for partial summary judgment on one of her
claims, is also the party with the burden of proof at trial.  Her burden on her motion
for partial summary judgment, therefore, consists of more than simply pointing out
deficiencies in her opponent's case; instead, she must establish her right to relief as a
matter of law.

*South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988);

see also *Celotex*, 477 U.S. at 324.

> B. <u>Morgan's and NMG's Cross-Motions for Summary Judgment</u>

Enacted in 1993, the FMLA sought to meet the needs of families while

accommodating the legitimate interests of employers.  *Bocalbos v. National Western Life*

*Insurance Company*, 162 F.3d 379, 382 (5th Cir.) (citing 29 U.S.C. § 2601(b)(3)), *cert.*

*denied*, 528 U.S. 872 (1999).  To achieve this goal, the FMLA allows eligible

employees working for covered employers to take temporary leave for medical

reasons, for the birth or adoption of a child, and for the care of a spouse, child, or

parent who has a serious health condition.  29 U.S.C. §§ 2601(b)(2), 2612(a)(1).

Under its prescriptive and proscriptive provisions, the FMLA provides two methods

of recovery.[3]  29 U.S.C. §§ 2612(a)(1) (setting forth entitlement to FMLA leave),

2614(a) (providing right to restoration to same or equivalent position upon return

from FMLA leave), 2615(a) (prohibiting interference with employee's exercise of

FMLA rights); see also *Bocalbos*, 162 F.3d at 383; *Porch v. Dillard's Inc.*, No. 4:03-CV-

0170-Y, 2004 WL 1809813, at *6 (N.D. Tex. Aug. 12, 2004) (Means, J.) (noting

---

[3]        Morgan moves for partial summary judgment on the prescriptive claim
alone, reserving her proscriptive/retaliation claim for trial.  Morgan's Motion at 16
n.8.  Since NMG's motion for summary judgment addresses solely Morgan's
eligibility for FMLA leave (which would also dispose of her retaliation claim), *see* 29
U.S.C. §§ 2611(2) (defining "eligible employee"), 2612(a)(1) (providing 12-week
leave for eligible employees), 2615(a) (prohibiting employer interference with eligible
employee's exercise of FMLA rights), the court will address only the *prima facie* case
for FMLA leave.

that plaintiff can recover for FMLA violations under two different theories:
entitlement (prescriptive) and retaliation/discrimination (proscriptive)).
Prescriptively, an eligible employee is granted the right, under certain circumstances,
to take up to 12 work-weeks of leave in a 12-month period.  29 U.S.C. § 2612(a)(1).
Upon return from her FMLA leave, the employee is entitled to immediate restoration
to the same position, or its equivalent, that she occupied prior to leave.  *Haley v.
Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).  If an employer should
deny the employee these rights, that employer has violated the FMLA's entitlement
provision, and recovery is permitted.  See *Porch*, 2004 WL 1809813 at *6.
Proscriptively, the FMLA contains prohibitions against penalizing an employee for
her exercise of FMLA rights.  29 U.S.C. § 2615(a); see also *Hunt v. Rapides Healthcare
System, LLC*, 277 F.3d 757, 763 (5th Cir. 2001); *Porch*, 2004 WL 1809813, at *8
("the FMLA protects employees from being discriminated or retaliated against
because they have exercised their rights under the FMLA").

To present a claim under the FMLA's prescriptive provision, a plaintiff must
show that (1) she is an eligible employee under the FMLA, (2) the defendant is an
employer subject to the requirements of the FMLA, (3) she was entitled to FMLA
leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and
(5) the defendant denied her the benefits to which, under the FMLA, she was
entitled.  *Id*. at *7 (quoting *Parker v. Hanhemann University Hospital*, 234 F. Supp. 2d

478, 483 (D.N.J. 2002)).[4]  Here, the only contested element of Morgan's claim is

whether she is an eligible employee under the FMLA.  *See generally* NMG's Motion; *see*

*also* Morgan's Motion at 18 n.9 (noting that Morgan submitted her request for leave

---

[4]        Although Morgan makes an effort to shift to NMG the burden of
establishing her eligibility under the FMLA by citing NMG's motion for summary
judgment (later corrected), Plaintiff's Reply Brief in Support of Her Motion for
Partial Summary Judgment("Morgan Reply") at 12 (citing NMG's Motion at 7 and
incorrectly citing "29 U.S.C. § 825.110(c)"), the court finds the rest of the cited
regulation to be more instructive: "[i]n the event an employer does not maintain an
accurate record of hours worked by an employee, . . . the employer has the burden of
showing that the employee has not worked the requisite hours.").  29 C.F.R.
§ 825.110(c).  Considering the entire regulation and the plethora of available case law
holding that the plaintiff bears the burden of establishing that she is an eligible
employee under the FMLA, the court will place the burden on Morgan, rather than
relying on NMG's mistake (since corrected).  *See* Defendant's Reply Brief in Support
of its Motion for Summary Judgment ("NMG's Reply") at 10; see, *e.g.*, *Porch*, 2004
WL 1809813, at *7; *Henson v. Bell Helicopter Textron, Inc.*, No. 4:01-CV-1024, 2004
WL 238063, at *10 (N.D. Tex. Feb. 6, 2004) (Means, J.) ("The employee bears the
burden of proving that he was entitled to FMLA leave . . ."), *aff'd*, 128 Fed. Appx.
387 (5th Cir. 2005); *Richardson v. Monitronics International, Inc.*, No. 3:02-CV-2338-N,
2004 WL 287730, at *2 (N.D. Tex. Jan. 27, 2004) (Godbey, J.), *aff'd*, 108 Fed.
Appx. 908 (5th Cir. 2004); *Brown v. DaimlerChrysler Corporation*, No. 3:99-CV-1286-
D, 1999 WL 766021, at *2 (Sept. 24, 1999) (Fitzwater, J.) (finding that, since a
plaintiff "must show *inter alia* that she was protected under the Act," plaintiff's claim
must be dismissed since she affirmatively pleaded that she did not meet the minimum
statutory hours requirements for FMLA eligibility); *Baung v. Entergy Corporation*, No.
98-1786, 1999 WL 397403, at *4 (E.D. La. June 15, 1999) (holding that, since
plaintiff had "offered no evidence to establish that he worked the requisite 1,250
hours in the twelve months prior to his FMLA request," plaintiff could not establish a
prima facie case for his FMLA claim and his motion for partial summary judgment
must be denied), *aff'd*, 211 F.3d 125 (5th Cir. 2000) (table); *Bulmer v. Yellow Freight
Systems, Inc.*, No. 99-9252, 2000 WL 637066, at *3 (2d Cir. May 16, 2000)
(unpublished) ("employee ineligibility is *not* an affirmative defense") (emphasis in
original); *Pennant v. Convergys Corporation*, 368 F. Supp. 2d 1307, 1310 n.3 (S.D. Fla.
2005) ("The burden is on the plaintiff to prove that he qualified for FMLA leave.  An
alleged deficiency in an affirmative defense does not discharge the plaintiff of his
burden.").

within the time frame prescribed by the FMLA and was approved); *id*. at 19 n.10 (noting that defendant conceded, in its responses to plaintiff's first request for admissions, that it is an "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(i)); NMG's Motion at 3 (noting that NMG terminated Morgan "[s]hortly after her return" from FMLA leave).

Not all employees are eligible to take such leave, so the issue of FMLA eligibility is a threshold question in FMLA suits.  The FMLA defines an eligible employee as one who has worked for a covered employer for at least 1,250 hours during the preceding 12 months.  29 U.S.C. § 2611(2)(A).  Failure to establish this element of statutory coverage precludes a plaintiff from recovering under the FMLA. See *Brown*, 1999 WL 766021, at *2 ("Congress imposed clear statutory prerequisites for bringing an FMLA claim. . . .  Courts have resisted attempts to expand the class of employees eligible for relief under the FMLA.").

Here, NMG contests whether Morgan met the statutory requirement of 1,250 hours.  NMG's Motion at 7.  Without evidentiary rebuttal from Morgan, NMG shows four different time periods in which Morgan did not work the minimum of 1,250 hours for FMLA eligibility.  *Id*. at 7-8 (citing Hicks Declaration ¶ 5 (NMG's Appendix at 3); Exhibit 1 *attached to* Hicks Declaration (NMG's Appendix at 6-31)).[5]

_____

[5]        The four time periods are as follows:  July 18, 2001 to July 17, 2002 (1156.23 hours); Aug. 30, 2001 to Aug. 29, 2002 (1194.30 hours); Sept. 4, 2001 to Sept. 3, 2002 (1194.98 hours); and May 11, 2002 to May 10, 2003 (1151.62

(continued...)

Morgan proffers no evidence indicating that she worked the required 1,250 hours; instead, she contests the evidence used to calculate those totals.  Plaintiff's Brief in Support of Her Response in Opposition to Defendant's Motion for Summary Judgment ("Morgan's Response") at 23-25.  But perhaps more convincing is Morgan's argument that NMG should be estopped from challenging Morgan's eligibility based on representations made by NMG's assistant manager for human resources when Morgan first sought FMLA leave.  Specifically, it is undisputed that McLendon made the initial eligibility determination based upon Morgan's payroll registers and approved Morgan for intermittent FMLA leave.  *See* Morgan's Motion at 7 n.2 (citing Oral Deposition of Kelly McLendon ("McLendon Deposition") at 151 (Plaintiff's Appendix in Support of Her Motion for Partial Summary Judgment ("Morgan's Appendix") at 76)); *see also* Brief in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("NMG's Response") at 10 (". . . that evidence proves only a point that is *not* in dispute -- that NMG approved her leave request") (emphasis in original).  Following this approval, Morgan began her FMLA leave.  Morgan's Motion at 7.

Considering the circumstances encountered by Morgan, fairness suggests the application of a judicially-created doctrine permitting recovery in particular

---

[5](...continued)
hours).  NMG's Motion at 8 (citing Hicks Declaration ¶ 5 (NMG's Appendix at 3); Exhibit 1 *attached to* Hicks Declaration (NMG's Appendix at 6-31)).  These totals clearly come very close to the 1,250 hour statutory threshold.

circumstances: equitable estoppel.[6]  This doctrine is "deeply rooted in the equitable

principle that no one should be permitted to profit from his own wrongdoing in a

court of justice."  *McGregor v. Louisiana State University Board of Supervisors*, 3 F.3d

850, 865 (5th Cir. 1993), *cert. denied*, 510 U.S. 1131 (1994).  As stated in *Matsuo*

*Yoshida v. Liberty Mutual Insurance Company*, 240 F.2d 824 (9th Cir. 1957), "estoppel

is any conduct, express or implied, which reasonably misleads another to his prejudice

so that a repudiation of such conduct would be unjust in the eyes of the law.  It is

grounded not on subjective intent but rather on the objective impression created by

the actor's conduct."  *Id*. at 829-30 (internal citations omitted) (quoted in *Morgan v.*

*Thomas*, 448 F.2d 1356, 1365 (5th Cir. 1971), *cert. denied*, 405 U.S. 920 (1972)).

However, because this doctrine is "a uniquely judicial remedy," the court should

apply it "only when the facts of a particular case warrant its strong medicine."  *Wolke*

*v. Dreadnought Marine, Inc.*, 954 F. Supp. 1133, 1137 (E.D. Va. 1997).

---

[6]      Although anticipated by NMG, *see* NMG's Motion at 8-9 and NMG's
Response at 11-13, Morgan does not rely on 29 C.F.R. § 825.110, which states, "[i]f
the employer confirms eligibility at the time the notice for leave is received, the
employer may not subsequently challenge the employee's eligibility."  Many courts
have held this regulation issued by the Department of Labor to be invalid on the
ground that it expands employee eligibility beyond the scope of the statutory
language.  See, *e.g.*, *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51,
56-57 (2d Cir. 2001); *Evanoff v. Minneapolis Public Schools, Special School District No. 1*,
11 Fed. Appx. 670, 671 (8th Cir. 2001); *Brungart v. BellSouth Telecommunications, Inc.*,
231 F.3d 791, 797 (11th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001); *Dormeyer v.*
*Comerica Bank-Illinois*, 223 F.3d 579, 583 (7th Cir. 2000).  The Fifth Circuit has yet
to decide this issue, and since Morgan does not rely on this questionable regulation,
the court will not discuss it further.

Although the Fifth Circuit has yet to invoke equitable estoppel in circumstances such as this, other courts have felt such instances are appropriate for the doctrine.  See, *e.g.*, *Dormeyer v. Comerica Bank -- Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) ("[a]nd so an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave"); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir. 2002) (finding that employer was estopped from asserting defense that employee exhausted his 12 weeks of FMLA leave when employer informed employee that his 34-week leave was fully covered by the FMLA); *Woodford*, 268 F.3d at 57 n.2 (court noting that it would "willingly consider" an equitable estoppel argument on appeal had it been raised by the plaintiff asserting an FMLA claim); *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 723-27 (2d Cir. 2001) (finding that the employer was estopped to challenge the employee's eligibility because of its failure to post FMLA eligibility requirements); *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 797 n.4 (11th Cir. 2000) (noting that other circuits have speculated about the possibility of applying equitable estoppel, but finding that the facts in the instant case were not sufficient to invoke the doctrine), *cert. denied*, 532 U.S. 1037 (2001); *Gurley v. Ameriwood Industries, Inc.*, 232 F. Supp. 2d 969, 974 (E.D. Mo. 2002) (citing *Duty*, 293 F.3d at 494).

If Morgan should prove the elements necessary for the invocation of equitable estoppel, see *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876, 879 (5th Cir.) (holding that plaintiff has the burden to prove equitable estoppel should that doctrine be invoked against the defendant), *cert. denied*, 502 U.S. 868 (1991), that doctrine should apply here.  Thus, if Morgan can meet this burden, NMG would be estopped from contesting Morgan's eligibility and part of her FMLA entitlement claim would be established.[7]

To invoke equitable estoppel against a private party, a litigant must establish that the party to be estopped:

(1) made a material misrepresentation or concealment

(2) with actual or constructive knowledge of the true facts

(3) with the intent that the misrepresentation or concealment be acted upon

(4) by a party without knowledge or means of knowledge of the true facts

(5) who detrimentally relies or acts on the misrepresentation or concealment.

_____

[7]     NMG argues that Morgan cannot rely on this argument because she never affirmatively pleaded estoppel in her complaint.  NMG's Reply at 11.  Where the defendant has produced evidence supporting estoppel, however, there is no reason why plaintiff may not have the advantage of this equitable doctrine.  See *Missouri Pacific Rail Company v. Bartlett*, 79 F.2d 275, 279 (8th Cir.), *cert. denied*, 296 U.S. 620 (1935).  Since NMG has specifically disclosed and conceded that NMG approved Morgan for leave, it cannot now claim to be surprised by Morgan's estoppel argument.

*Matter of Christopher*, 28 F.3d 512, 520 (5th Cir. 1994) (citing *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 n.4 (5th Cir. 1990)); see also *Jewel Seafoods Ltd. v. M/V Peace River*, 39 F. Supp. 2d 628, 634 (D.S.C. 1999) (in federal question cases, federal principles of equitable estoppel apply).

Morgan's case, analyzed under these traditional principles of estoppel, satisfies all elements but one; this one, however, prevents the court from granting partial summary judgment to Morgan.  First, it is undisputed that NMG made a material misrepresentation to Morgan when it determined that she was an eligible employee and approved her request for intermittent FMLA leave.  In addition, NMG had either actual or constructive knowledge of the fact that Morgan had not reached the 1,250 hour threshold of employee eligibility.  McLendon was an experienced human resources representative, McLendon Deposition at 8-9 (Morgan's Appendix at 58-59), whose business practice was to review payroll registers from the previous year to determine eligibility.  *Id.* at 21-22 (Morgan's Appendix at 63-64).  Given these facts, and the ease with which NMG was able to obtain Morgan's annual hours during discovery, it is apparent that NMG had sufficient knowledge, for estoppel purposes, of the facts of Morgan's eligibility.  Next, Morgan must show that NMG intended that she rely on its misrepresentation.  Because NMG informed Morgan of her eligibility in response to her request for FMLA leave, it is obvious that NMG intended reliance by Morgan.  The fourth element requires that the party asserting

estoppel had no knowledge of the facts.  Here, Morgan provided a declaration

asserting that she was not aware of what was required to be eligible for FMLA leave

and that she never inspected her payroll registers because was not aware of her ability

to do so.  Supplemental Declaration of Malana J. Morgan ("Supplemental Morgan

Declaration") ¶¶ 2, 4 (Plaintiff's Appendix in Support of Her Response in Opposition

to Defendant's Motion for Summary Judgment ("Morgan's Response Appendix") at

1-2).  In addition, considering the totals provided by NMG for four different periods,

Morgan's hours were close enough to the 1,250 threshold that any belief she had in

NMG's misrepresentation would have been reasonable.  See *supra*, note 5.

The final element required for the invocation of equitable estoppel is the most

problematic for Morgan.  Here, Morgan must show that she detrimentally relied on

NMG's misrepresentation.  Morgan has provided a declaration stating that, "[h]ad

[NMG] not represented to me that it had approved me for FMLA leave to care for

my husband, I could have and would have made alternative arrangements for the care

of my husband.  I could, for instance, have made arrangements with our daughter to

care for him."  Declaration of Malana J. Morgan ("Morgan Declaration") ¶ 11

(Morgan's Appendix at 5).  NMG responds with testimony from Morgan's deposition

in which she testified, in essence, that her husband was so ill that she personally was

needed to care for him, rather than having someone else stand in for her.  NMG's

Reply at 12-13 (citing Morgan Deposition at 86-87 (NMG's Appendix at 81-82)).

Although somewhat inconsistent, this testimony does not directly contradict her declaration -- Morgan gave this answer in reference to the time period after her termination from NMG, but prior to her employment at Dicker Staffing.  See *id*. at 12.  It does, however, raise a genuine issue of fact regarding whether Morgan actually relied on NMG's misrepresentation.  If Morgan had taken leave to care for her husband without NMG's approval, Morgan could not, under the circumstances, have been detrimentally relying on NMG's eligibility determination.  See *Nordquist v. City Finance Company*, 173 F. Supp. 2d 537, 540 (N.D. Miss. 2001) (finding estoppel not applicable when "[t]here is absolutely no evidence before the court that plaintiff, who requested leave for the birth of her child, would not have taken leave even if defendant had denied her application for FMLA leave.").  Because Morgan bears the burden of proof on this claim at trial, she must establish this element beyond peradventure to prevail on her motion for partial summary judgment.  See *Fontenot*, 780 F.2d at 1194.  However, as discussed above, the evidence in this record does not meet this standard.  Summary judgment on this claim must be denied.

NMG has also moved for summary judgment on Morgan's eligibility under the FMLA.  As discussed above, Morgan has pointed to some evidence that she relied on NMG's misrepresentation.  This discharges Morgan's burden, as the nonmovant, of showing a genuine issue of material fact.  NMG's motion for summary judgment is therefore denied.

C.  NMG's Motion for Summary Judgment Limiting Morgan's Damages

As an alternative to NMG's motion for summary judgment on all of Morgan's claims, NMG seeks summary judgment limiting the damages claimed by Morgan.  *See* NMG's Motion at 1.  In particular, NMG argues that summary judgment limiting Morgan's damages should be granted because (1) Morgan declined NMG's unconditional offer to reinstate her two weeks after her discharge; (2) she failed to exercise reasonable diligence to secure other employment; or (3) the new employment secured by Morgan is comparable to her previous position at NMG, and NMG is therefore not responsible for damages accruing beyond the date she obtained this new employment.  *Id*.  Morgan contests every argument for limiting her damages.  *See* Morgan's Response at 37-49.

### 1.  *NMG's Expert Report*

As a threshold matter, the court must address whether certain evidence submitted by NMG is properly before the court in the summary judgment record.  Both parties have filed motions regarding the court's consideration of an expert report prepared by Patricia Harris ("Harris").  *See generally* Plaintiff's Objections to and Motion to Strike Portions of Defendant's Summary Judgment Evidence and Brief in Support ("Morgan's Motion to Strike"); Defendant's (Conditional) Motion to Consider Expert Report as Part of the Summary Judgment Record, and Brief in Support ("NMG's Motion to Consider").

Morgan objects to the court's consideration of Harris' report because the report was unsworn when originally filed. Morgan's Motion to Strike at 2. In addition, Morgan notes that NMG provided only select portions of Harris' report, rather than the entire document. *Id*. at 3. NMG responds that such inadequacies of Harris' report are easily corrected by filing both a sworn affidavit of Harris and supplementing the summary judgment record with the entirety of Harris' report. Defendant's Response to Plaintiff's Motion to Strike Portions of Defendant's Summary Judgment Evidence, and Brief in Support ("NMG's Response to Motion to Strike") at 2-3. NMG also supports this argument with the assertion that Morgan will not be prejudiced by such supplementation since Morgan's counsel has had Harris' entire report since July 15, 2005 -- over two months prior to the motions for summary judgment filed in this case. *Id*. at 3; Docket Sheet. As stated previously, NMG sought leave of the court to supplement the summary judgment record when it filed a motion for the court to consider Harris' entire report and supporting declaration. NMG's Motion to Consider; Appendix in Support of Defendant's Reply Brief in Support of its Motion for Summary Judgment ("NMG's Reply Appendix") at 1-43 (containing Harris' declaration and entire report).

In general, unsworn documents are not competent summary judgment evidence. *See* FED. R. CIV. P. 56(e); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991). As noted by NMG in its response to Morgan's motion to strike,

however, this court has previously considered unsworn summary judgment evidence if later corrected by the parties.  See *Hanes v. Syms Corporation*, No. 3:98-CV-1788-G, 1999 WL 305105, at *1 (N.D. Tex. May 5, 1999) (considering plaintiff's evidence in response to defendant's motion for summary judgment after supporting affidavit filed).  Although it could be argued that this court considered such evidence in *Hanes* because the party seeking to correct the defect was the nonmovant, *see* Plaintiff's Reply Brief in Support of Her Motion to Strike Portions of Defendant's Summary Judgment Evidence at 6, the court concludes that unsworn declarations, later corrected, should be considered on motions for summary judgment.  *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-CV-1397-P, 2003 WL 251318, at *20 (N.D. Tex. Feb. 3, 2003) (Solis, J.) (denying nonmovant's motion to strike an expert statement as moot since expert remedied defect by submitting sworn declaration).  Accordingly, NMG's motion to consider Harris' report is granted, and Morgan's motion to strike this report is denied as moot.

### 2.  *Limitation of Damages Recoverable by Morgan*

Under the FMLA, a prevailing plaintiff is entitled to recover actual damages, 29 U.S.C. § 2617(a)(1)(A)(i)(I) (listing actual damages as "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation"), plus interest, 29 U.S.C. § 2617(a)(1)(A)(ii), plus liquidated damages in an amount to actual damages plus interest, 29 U.S.C.

§ 2617(a)(1)(A)(iii).  When seeking to recover such damages in an employment

discrimination case, the plaintiff is under a duty to mitigate.  *Miller v. AT&T*

*Corporation*, 250 F.3d 820, 838 (4th Cir. 2001); *Sellers v. Delgado College*, 902 F.2d

1189, 1193 (5th Cir.) ("*Sellers III*") (quoting *Ford Motor Company v. EEOC*, 458 U.S.

219, 231 n.15 (1982) (this duty arises from "an ancient principle of law . . . [that]

where one person has committed a . . . legal wrong against another it is incumbent

upon the latter to use such means as are reasonable under the circumstances to avoid

or minimize the damages")), *cert. denied*, 498 U.S. 987 (1990).  Although the

employee has this duty to mitigate her damages resulting from the defendant's alleged

misconduct, it is the employer's burden to show that the plaintiff has failed to do so.

*Sellers v. Delgado Community College*, 839 F.2d 1132, 1138 (5th Cir. 1988) ("*Sellers*

*II*"); *Snow v. Healthsouth Corporation*, No. IP00-0151-C-M/S, 2001 WL 395124, at

*26 (S.D. Ind. Mar. 21, 2001) ("failure to mitigate is an affirmative defense").

Accordingly, since NMG is moving for summary judgment, it bears the burden of

proving to the court "beyond peradventure" that Morgan failed to mitigate her

damages.  *Fontenot*, 780 F.2d at 1194.

a.  Unconditional Offer of Reinstatement

NMG first requests that this court limit Morgan's damages because she refused

an unconditional offer of reinstatement after her termination.  NMG's Motion at 10-

11.  Ordinarily, an unconditional offer of reinstatement tolls an employer's back-pay

liability. *Lewis Grocer Company v. Holloway*, 874 F.2d 1008, 1012 (5th Cir. 1989)

(citing *Figgs v. Quick Fill Corporation*, 766 F.2d 901, 902-903 (5th Cir. 1985)).  Here,

NMG argues that the letter allegedly sent by McLendon was an unconditional offer

of reinstatement that Morgan declined by failing to respond within the time allotted

in the letter.  *See* NMG's Motion at 10-11; McLendon Deposition at 55 (NMG's

Appendix at 117); Exhibit 18 *attached to* Morgan Deposition (NMG's Appendix at

110-111).  Morgan responds that she never saw the letter before the institution of

this suit, and if she had, she would have returned to work for NMG.[8]  Morgan's

Response at 12 (citing Morgan Declaration ¶ 12 (Morgan's Appendix at 5); Morgan

Deposition at 102-103 (Morgan's Response Appendix at 20-21)), 38-39 (repeating

argument that genuine issues of material fact are present regarding the circumstances

of the unconditional offer).  Devoting considerable space in her brief in response to

NMG's motion for summary judgment, *see* Morgan's Response at 11-19, 38-43,

Morgan calls into question multiple aspects of NMG's argument and alleged offer of

reinstatement.[9]  The court concludes that the question of whether an offer of

───────────────

[8]      As noted by NMG, Morgan does not contest whether this letter was
unconditional.  Consequently, the only issue is whether Morgan received this offer
and subsequently rejected it.

[9]      The court will refrain from reciting Morgan's multiple arguments
questioning the receipt of NMG's offer of reinstatement.  However, the bulk of her
argument relies on the testimony of McLendon that she does not remember sending
the letter, Morgan's Response at 39 (citing McLendon Deposition at 68 (Morgan's
Response Appendix at 43)), and Morgan's own affidavit declaring that she never

(continued...)

reinstatement was made and rejected must be determined by a jury rather than the court.  Therefore, summary judgment is denied regarding this aspect of Morgan's alleged failure to mitigate damages.

b.  <u>Morgan's Reasonable Diligence in Obtaining<br> Substantially Equivalent Employment</u>

NMG's next argument is two-fold.  First, it argues that Morgan failed to mitigate her damages by not exercising reasonable diligence in pursuing employment that is substantially equivalent to her position at NMG.  NMG's Motion at 11-12. Second, NMG argues that Morgan's current employment at Dicker Staffing is substantially equivalent to her position at NMG, so that Morgan's damages should terminate on the date she removed herself from the job market by joining Dicker Staffing and ending her search for other employment.  *Id*. at 13-14.  Morgan contests both of these arguments.  *See generally* Morgan's Response.

---

[9](...continued)
received it.  Morgan's Response at 12 (citing Morgan Declaration ¶ 12).  In addition, Morgan offers several other arguments questioning the validity of NMG's reliance on employees and business records to prove that Morgan received the letter via certified mail.  *See generally* Morgan's Response.

In the context of Title VII employment discrimination suits,[10] employers meet the burden of establishing failure to mitigate by showing that "substantially equivalent work was available and . . . the . . . claimant did not exercise reasonable diligence to obtain it." *Sellers III*, 902 F.2d at 1193 (citing *Sellers II*, 839 F.2d at 1139). However, should an employer prove "that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.* (quoting *Sellers II*, 839 F.2d at 1139). Here, NMG seeks to show that Morgan did not exercise reasonable diligence in pursuing other employment that was "substantially equivalent" to her position at NMG prior to her termination. NMG's Motion at 11-12. Therefore, if successful in proving this to the court, NMG is not required to show that substantially equivalent work was available. See *Sellers III*, 902 F.2 at 1193.

NMG relies mainly on Harris' expert report and the deposition testimony of Morgan to support its arguments for limiting damages. *See generally* NMG's Motion; NMG's Reply. Specifically, based upon the available information and independent

---

[10]     Although formulated in the context of Title VII, the same rationale should be applicable to other employment discrimination claims, such as those under the FMLA. See, *e.g.*, *Voyles v. Louisville Transportation Company*, 136 Fed. Appx. 836, 838 (6th Cir. 2005) (per curiam) (applying Title VII mitigation of damages standard to FMLA claims); *Nichols v. Ashland Hospital Corporation*, 251 F.3d 496, 503 (4th Cir. 2001) (finding sufficient evidence to rebut employer's defense that employee "failed to exercise reasonable diligence and care in seeking employment that is substantially equivalent to her prior position"). Accordingly, the court will use Title VII case law to analyze FMLA damage mitigation issues.

research, Harris concludes that Morgan should have been able to obtain employment that she ultimately accepted at Dicker Staffing within sixty days of termination from NMG.  July 15, 2005 Vocational Expert Report of Patricia Harris ("Harris Report") at 10 (NMG's Appendix at 136).  Therefore, NMG argues, Morgan's damages should be terminated as of that date.  NMG's Motion at 11-12.  Additionally, based on Harris' expert report stating that Morgan could have obtained employment substantially equivalent to her position at NMG within six months of a reasonably diligent search, NMG argues, in the alternative, that Morgan's damages should be cut off as of that six-month date.  *Id*. at 12; Harris Report at 4 (NMG's Appendix at 135).  Finally, as another basis for limiting damages, NMG argues that Morgan's employment at Dicker Staffing is substantially equivalent to her position at NMG, NMG's Motion at 13-14, but, even if it is not, Morgan has removed herself from the job market by not seeking other employment after being hired by Dicker Staffing.  *Id*. at 14.

Given the highly fact-intensive inquiry regarding a plaintiff's diligence while undertaking a search for substantially equivalent employment, it should come as no surprise that both Morgan and NMG offer competing evidence.  To support its multiple contentions and the conclusion determined by Harris, NMG points to several facts gleaned from Morgan's deposition testimony.  First, despite searching classified advertisements in the newspapers, Morgan limited her job search to those

close to home.  *Id*. at 12.  In addition, Morgan consulted "at most" two temporary

employment agencies during the eighteen months she was unemployed after her

termination.  *Id*.  Morgan responds, characterizing her employment search as

involving six days a week (constituting either searching for or following up on

potential jobs) and stating that in addition to "scouring" the newspapers for jobs

immediately after her termination, she utilized the internet.  Morgan's Response at

19.  She also argues that "the best evidence of the reasonableness of [her efforts to

minimize her damages] is the following undisputed fact: *Morgan eventually secured*

*alternative employment*."  *Id*. at 45 (emphasis in original).

    With claimants pursuing damages after being wrongfully terminated, there

necessarily exists a spectrum in the law regarding findings of "reasonable diligence."

See, *e.g.*, *Sellers III*, 902 F.2d at 1194-95 (holding that magistrate's finding that

employee was not reasonably diligent was not clearly erroneous when employee

averaged less than one job application per month for a period of three years, months

passed when she did not submit any employment applications, and she exhibited a

minimal response to advertisements for substantially equivalent jobs); *Vaughn v.*

*Sabine County*, 104 Fed. Appx. 980, 984-85 (5th Cir. 2004) (affirming finding that

plaintiff mitigated damages by "seeking and accepting the best employment [she]

could find" even though she could not search for employment far from home because

of husband's failing health); *Hansard v. Pepsi-Cola Metropolitan Bottling Company, Inc.*,

865 F.2d 1461, 1468 (5th Cir.) (finding that employee failed to mitigate damages by not engaging in any job search), *cert. denied*, 493 U.S. 842 (1989).  The court therefore finds that a reasonable jury could conclude either way regarding Morgan's diligence in searching for employment after her termination and before obtaining employment with Dicker Staffing.[11]  Finding a genuine issue of material fact regarding this issue, the court concludes that NMG has not sustained its summary judgment burden, and its motion for summary judgment must therefore be denied.

The court also concludes that NMG's alternative prayer, to limit Morgan's damages to sixty days after her termination, must be denied.  NMG urges this limitation on the basis of Harris' conclusion that Morgan could have obtained employment similar to her Dicker Staffing position within sixty days.  An employee has a duty to mitigate, but she has no obligation to accept employment that is not substantially equivalent to her prior employment in order to minimize her damages. *Vaughn*, 104 Fed. Appx. at 984 (5th Cir. 2004) (citing *Ford Motor*, 458 U.S. at 231). Therefore, Morgan's damages cannot be limited for failing to seek her position at

---

[11]     One of the bases leading Harris to conclude that Morgan was not reasonably diligent in her job search was the fact that Morgan did not obtain a position similar to that found at Dicker Staffing earlier than she did.  NMG's Reply Appendix at 9-11.  It should be noted that, although the employee has a duty to mitigate her damages, this duty does not require that the employee take a demeaning job, accept a demotion, or go into another line of work. *Ford Motor*, 458 U.S. at 231-32.  With no proof or argument indicating that the position at Dicker Staffing was equivalent to Morgan's position at NMG, Harris' conclusion regarding diligence cannot be accepted.

Dicker Staffing with reasonable diligence unless it is first found that this position is substantially equivalent to her position at NMG.  See *Sellers III*, 902 F.2d at 1194 (noting that the employer's liability for back pay is tied to the employee's right, not to just another job, but to one substantially equivalent to the position from which she was terminated; therefore the mitigation inquiry should be focused on whether the employee exercised reasonable diligence to obtain *substantially equivalent employment*, not *any* other employment).  However, as discussed below, NMG bears the burden of proof on this issue but has failed to sustain this burden.  Accordingly, NMG's motion to limit Morgan's damages to sixty days of unemployment must be denied.

### c.  Morgan's Employment at Dicker Staffing

NMG's next arguments involve Morgan's employment at Dicker Staffing. Rather than attempting to sustain its burden of proving to the court beyond peradventure that Morgan's new employment was substantially equivalent to her position at NMG, NMG merely concludes that "[g]iven Morgan's background, her position at Dicker is 'substantially equivalent' to her previous one at NMG."  NMG's Motion at 13-14.  Without additional support from NMG, and the fact that Dicker Staffing does not offer the medical benefits provided at Morgan's former position, *see* Morgan's Response at 46, the court cannot conclude that NMG has carried its burden of showing that Morgan's damages should be cut off as of the date of her

employment with Dicker Staffing.  The court therefore finds that this basis for limiting Morgan's damages is inappropriate for resolution by summary judgment.

As for NMG's final argument for limiting damages because Morgan allegedly did not search for employment after accepting her position at Dicker Staffing, Morgan counters with a declaration stating that "since my deposition in June 2005, I have resumed my search for a job other than the one I have at Dicker Staffing that will pay me comparable wages and benefits similar to that I enjoyed at Neiman-Marcus."  Supplemental Morgan Declaration ¶ 7 (Morgan's Response Appendix at 3).  NMG accurately states that this basis for limiting Morgan's damages is not an affirmative defense.  NMG's Reply at 17.  Despite the fact NMG is not required to prove this argument beyond peradventure, summary judgment on this issue is still improper.  Morgan has pointed to evidence (her declaration) creating a genuine issue of material fact regarding her job search after obtaining employment at Dicker Staffing.  NMG finds this declaration lacking, calling it "conclusory" and requesting that the court disregard it.  *Id.*  While NMG contests the statement based on the fact that it "lacks detail," Morgan specifically stated that she began seeking employment after June 2005, and is currently searching for a position that offers her wages and benefits similar to those offered by NMG.  Taken in conjunction with Morgan's arguments in her response to NMG's motion for summary judgment, the court finds sufficient detail to render the declaration more than conclusory:  Morgan wishes to

find employment offering benefits such that she and her husband will not have to incur extraordinary out-of-pocket expenses for their medical problems and wages such that she will not have to work a greater number of hours compared to her position at NMG. *See* Morgan's Response at 19-20, 46. The court therefore finds NMG's argument to disregard this declaration unpersuasive.

### III.  CONCLUSION

For the reasons stated above, NMG's motion to consider Harris' expert report as part of the summary judgment record is **GRANTED**, Morgan's motion to strike this report is **DENIED** as moot, and both parties' motions for summary judgment are **DENIED**.

**SO ORDERED**.

December 20, 2005.

_____

A. JOE FISH
CHIEF JUDGE

- 30 -